UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKIE WALKER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SPECIALIZED LOAN SERVICING LLC,<br><br>　　　　　Defendant. | No. 2:16-cv-1794 TLN GGH<br><br><br>FINDINGS AND RECOMMENDATIONS |

*PROCEDURAL BACKGROUND*

On July 29, 2016 plaintiff filed a Complaint for damages under the Fair Debt Collection Practices Act, 28 U.S.C. § 2201, ECF No. 1, together with a motion to proceed in forma pauperis. ECF No. 2. The court granted in forma pauperis status on January 23, 2017. ECF No. 6.

On June 12, 2017 defendant moved to dismiss the Complaint and noticed the motion for hearing before the district court judge. ECF No. 12. On the same day the district court issued a minute order directing that the matter be renoticed for hearing before the assigned magistrate judge. ECF No. 13. The matter was then scheduled by this court's minute order for hearing on the undersigned magistrate's calendar on July 20, 2017. ECF No. 14.

Plaintiff failed to file any Opposition and on July 18, 2017 this court issued an Order vacating the calendar and requiring plaintiff to notify the court why no opposition had been filed in accordance with the Local Rules of the Court and requiring either an Opposition or a Statement

1

of non-Opposition to be filed no later than July 31 2017. ECF No. 17. Plaintiff filed an Opposition Memorandum on July 31, 2017, ECF No. 18, and defendant filed a Reply Memorandum on August 8, 2017, ECF No. 19, at which time the motion was taken under submission.

However, on December 28, 2017, the undersigned ordered further briefing which the undersigned determined was necessary to the resolution of the motion to dismiss.

*PLAINTIFF'S COMPLAINT*

A. LEGAL STANDARD

Defendant SLS asserts plaintiff has failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). As a threshold matter it is important to understand the unique way in which the rule is applied to a pro se plaintiff's complaint.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-521 (1972). Pro se complaints are construed liberally and may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

In reviewing a complaint under this standard, the court will (1) accept as true all of the factual allegations contained in the complaint, unless they are clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the plaintiff, and (3) resolve all doubts in the plaintiff's favor. See Neitzke v. Williams, 490 U.S. 319, 326-327; Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), *cert. denied*, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). It is also true, however, that the court need not accept as true, legal conclusions cast in the form of factual allegations, see Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), or allegations that contradict matters properly subject to judicial notice. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), *amended o.g.* 275 F.3d 1187 (2001).

*B.     JUDICIAL NOTICE*

SLS has requested that the court take judicial notice of loan documents on the property at issue as well as bankruptcy court records. Plaintiff does not object to this, and indeed, the existence of these historical documents are relevant to this Motion to Dismiss to demonstrate what actions were taken and when. Judicial notice is granted. However, that does not mean that the court can accept the truth of the facts as set forth therein.

> While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean. *See*, e.g., <u>Hennessy v. Penril Datacomm Networks, Inc.</u> 69 F.3d 1344, 1354–1355 (7th Cir.1995); <u>Wilshire Westwood Assocs. v. Atlantic Richfield Corp.</u>, 881 F.2d 801, 803 (9th Cir.1989).
>
> "Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice." <u>Del Puerto Water Dist. v. U.S. Bureau of Reclamation</u>, 271 F.Supp.2d 1224, 1234 (E.D.Cal.2003). <u>see</u> <u>also</u>, <u>California ex rel. RoNo, LLC v. Altus Finance S.A.</u>, 344 F.3d 920, 931 (9th Cir.2003) ("requests for judicial notice are GRANTED to the extent that they are compatible with Fed. Rule Evid. 201 and do not require the acceptance of facts 'subject to reasonable dispute;' " *quoting* <u>Lee [v. City of Los Angeles]</u>, 250 F.3d [668] at 690*);* <u>Kent v. Daimlerchrysler Corp.</u>, 200 F.Supp.2d 1208, 1219 (N.D.Cal.2002); <u>Weizmann Institute of Science v. Neschis</u>, 229 F.Supp.2d 234, 246–47 (S.D.N.Y.2002); <u>Happy Inv. Group v. Lakeworld Properties, Inc.</u>, 396 F.Supp. 175, 183 (N.D.Cal.1975); and <u>Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.</u>, 109 F.Supp.2d 1236, 1242–1243 (S.D.Cal.2000).

<u>U.S. v. Southern California Edison</u>, 300 F.Supp 2d 964, 974 (E.D. Cal. 2004) citing *Inter alia* <u>Lee</u>, <u>supra</u>, 250 F.3d at 689-690.

Accordingly, to the extent that the existence of the documents *per se* are relevant, judicial notice is accorded those documents. Judicial notice may be taken insofar as what the documents provide, e.g., a bankruptcy case was dismissed on the grounds set forth in an order. To the extent that SLS desires to have the truth of the facts in the documents admitted to be used in

adjudication of the Motion to Dismiss, judicial notice is denied.

C.     *FACTUAL ALLEGATIONS AND SUPPLEMENTAL FACTS*

The complaint recounted the following essential facts. Plaintiff took a mortgage with Bayrock Mortgage Corporation ["Bayrock"] secured by his home as evidenced by a deed of trust dated November 21, 2006 which was recorded the following day. Composite Exhibit A to Complaint. ECF No. 1 at 7-19. The Deed of Trust was accompanied by an Interest only Adjustable Rate Rider, id. at 26-29, and a Planned United Development Rider. Id. at 30-33.[1]

Plaintiff alleges that he defaulted on the debt on February 8, 2008, ECF No. 1 at ¶9. Defendant agrees that plaintiff defaulted but states in its Motion that the default occurred in on December 9, 2009, as evidenced by the judicially noticeable Notice of Default filed with the County Recorder on December 10, 2009. ECF 12-1 at 38-39. Another recorded document reflects that the loan was assigned to SLS on March 5, 2010, id. at 41-42, three months after the default was recorded.

On February 8, 2015 Walker received a "Debt Validation Letter" from Wilmington Trust as successor Trustee to Citibank, allowing him to dispute the validity of a debt for unpaid principal of $1,076,250.00, interest of $438,011.45, escrow advances of $158,096/96, and outstanding fees of $34,348.17 for a period of 30 days after which "the debt will be assumed to be valid by Specialized Loan Servicing LLC ["SLS"]." Id. at ¶ 11, Composite Exhibit A at 35.[2] Apparently in response to this letter plaintiff filed for bankruptcy relief under Chapter 11 of the U.S. Bankruptcy Code on February 24, 2015, case number 15-21393. Id. at ¶ 12.

On July 31, 2015 SLS filed a Claim with the Eastern District of California Bankruptcy Court in the amount of $1,692,111.72. Id. at ¶ 14, Composite Exhibit A at 36-41. Attached to the proof of claim is a "Resignation, Successor Appointment and Acceptance Agreement" in which Citibank resigns as trustee and passes the position to a successor trustee – Wilmington Trust

---

[1] Plaintiff attached a number of documents to his Complaint, but did not seek judicial notice of them. The court will however accord such notice to the documents submitted by plaintiff when they meet the requirement therefor as it proceeds throughout this Order.

[2] This document is not subject to judicial notice under Federal Rule of Evidence 201 but defendant refers to it in its Memoranda, and has raised no objection to its consideration.

1 | National Association and identifies SLS as the loan servicer for the successor trustee dated
2 | December 3, 2102.  Id., Composite Exhibit A at 43.  According to defendant's supplemental
3 | briefing, the property at issue has not yet been sold at trustee's sale on account of giving plaintiff
4 | "one more" opportunity to cure the default.
5 |      The undersigned became concerned based on the initial motion, that plaintiff's bankruptcy
6 | action was possibly still in processing at present, or was so at the time plaintiff filed his
7 | complaint.  SLS demonstrated in supplemental briefing that plaintiff's bankruptcy actions was
8 | dismissed in November 2015:

> Based on all of the information presented in this bankruptcy case, and in light of the Debtor's two prior failed Chapter 11 cases, the court concludes that the Debtor is not prosecuting this case as required by Chapter 11; has not attempted to prosecute this case in good faith; has not truthfully and accurate completed the Schedules and Statement of Financial Affairs, and the various amendments thereto, in this case; does not have the ability to prosecute a Chapter 11 case, propose a Chapter 11 plan, or confirm a Chapter 11 plan; and that the filing and continuing of this case is an abuse of the Bankruptcy Code. [¶] Furthermore, the Debtor does not oppose the court dismissing the bankruptcy case. Dckt. 79. [¶] Cause exists to dismiss this Chapter 11 case. The Debtor having recently concluded a Chapter 7 case and obtaining his discharge, and there being no disclosed unencumbered assets to liquidate, dismissal of this Chapter 11 case is in the best interests of creditors. [¶] Therefore, the Order is sustained, and the case is dismissed.

Defendants' Supplemental Briefing at Points and Authorities p 1-2 quoting the bankruptcy court order.

     Plaintiff's claims depend upon the characterization of SLS as a "debt collector," as opposed to a creditor, in its relation with plaintiff.  As will be shown, the distinction is an important one.  Plaintiff's claim is that SLS violated provisions of 15 U.S.C. section 1692e, which prohibits a debt collector to use any "false, deceptive or misleading representation or means," or to threaten to take any action it does not intend to take, or to use any "false representation or deceptive means" in its efforts to collect a debt.  Plaintiff claims that SLS's filing of the proof of claim was in an inflated sum and was brought after the California statute of

limitations had expired with regard to an action to collect a money judgment for balance due on an obligation arising from a deed of trust or mortgage. That statute, California Code of Civil Procedure section 337, declares a four year statute of limitations on "[a]n action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a[3] of this code; provided that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property . . . was given as security . . . shall not extend beyond three months after the time of sale under such deed of trust or mortgage." Plaintiff contends that the filing of the proof of claim in bankruptcy more than four years after his default constitutes a violation of this statutory limitation. He seeks general damages for "a concrete injury to his peace of mind and mental health," the value of the time he was "forced to waste" in evaluating SLS's proof of claim, and the pain and suffering resulting from being subject to illegal debt collection, statutory damages and "fees and costs."[4] .

*SLS'S MOTION TO DISMISS*

*A.    SLS – CREDITOR OR DEBT COLLECTOR*

Essentially SLS argues that it is not a "debt collector," but rather a mortgage servicer through its pleadings and documents submitted in connection with it for which it has sought, and will be granted, Judicial Notice under Federal Rule of Evidence 201. As a threshold matter, however, it is to be noted that SLS does not dispute several facts asserted by plaintiff and used in his argument that SLS is a debt collector.

Another recorded document that reflects an assignment of the beneficial interest in the Deed of Trust, to Citibank, N.A. after default, discloses that the loan, *after default*, was assigned by Bayrock to Citibank. Id. at Exh. 4. It wasn't until September 13, 2016, while the loan remained in default, that a notice of trustee's sale was recorded. Id. at Exh. 5. The parties report

---

[3] Section 336a has no application here insofar as it applies to corporate obligations held by the public, corporate mortgages etc.
[4] The claim for fee damages is confusing insofar as plaintiff is proceeding as an IFP litigant, i.e., without the assistance of an attorney.

6

that the property has not been sold as the creditor has extended plaintiff an opportunity to attempt a short sale.

SLS cites several cases which reflect the long-standing rule that originating creditors, originating mortgagors, and follow-on mortgage servicers are not debt collectors. See e.g., Williams v. Countrywide, 504 F.Supp.2d 176, 190 (S.D.Tex. 2007); Becker v. Wells Fargo Bank, N.S., Inc., 2011 WL 1103439 *20 (E.D.Cal. 2011) and Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). Each of these cases does distinguish between debt collectors, who can be held under the theory relied upon by plaintiff, from loan services, which SLS claims to be, with the caveat that the distinction applies "*as long as the debt was not in default at the time it was assigned.*"

The statute pursuant to which plaintiff sues adopts a critical distinction between a creditor, who cannot be a debt collector, and a debt collector who cannot be a creditor. Section (a)(6) of the statute, which defines the term "debt collector," provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include- . . .
>  (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; ***(iii) concerns a debt which was not in default at the time it was obtained by such person;*** or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.
> (Emphasis added.)

7

Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012), discusses the gravamen of the foregoing section as follows:

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector *depending on the default status of the debt at the time it was acquired. The same is true of a loan service, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. Citing* Wadlington v. Credit Acceptance Corp. 76 F.3d 103, 106-108 (6th Cir. 1996); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).

Bridge goes on to note that other circuits have adopted the same analysis citing FTC v. Check Investors, Inc., 502 F.3d `59, 171-173 (3rd Cir. 2007); Schlosser v. Fairbanks Capital Corp.,323 F.3d 534, 536 (7th Cir. 2003).

Although the Ninth Circuit has yet to discuss the reach of section (6)(F), district courts in the Circuit have done so. Jara v. Aurora Loan Services, 852 F.Supp.2d 1204, 1211 (N.D.Cal. 2012)(not a debt collector if debt was not in default at the time obtained); Wise v. Wells Fargo Bank, N.A., 350 F.Supp.2d 1047, 1053 (C.D.Cal. 2012)(assignee of a debt not a debt collector "as long as the debt was not in default at the time it was assigned.").

In a recent case decided in this District, the court began its analysis of the issue by determining at the outset that defendant Bank of America was not a debt collector "so long as the debt was not in default" at the time it was assigned to the defendant there. Dowling v. Bank of America, N.A., 2017 WL 3284675 *4 (E.D.Cal. 2017). Another factor that excludes inclusion of an action based on the status of the entity attempting to collect arrearages on a mortgage is that an entity that brings an action against the debt for the purpose of supporting non-judicial foreclosure is not a debt collector, but rather one who seeks to retake and resell the security for the mortgage, rather than to collect money from the borrower. Glaser v. Nationstar Mortgage, LLC, 2017 WL 1861850 *12 (N.D.Cal. 2017). There is no indication in the pleadings filed by either side that SLS's action was undertaken in connection with a non-judicial foreclosure activity.

The foregoing weighs heavily toward a determination that SLS is a debt collector, not a creditor, and can therefore be held to defend this action.

B.      *STATUTE OF LIMITATIONS*

This is not an ordinary statute of limitations issue. SLS does *no*t contend that plaintiff filed his FDCPA action after the *FDCPA statute of limitations* had run. Rather, plaintiff asserted in his Complaint that the filing of a claim in his bankruptcy action was a violation of section Cal. Code Civ. P 337 (1), insofar as the filing was made more than four years after his default thereby exceeding the statute of limitations. SLS argues that the merits of plaintiff's invalid filing claim (or at least half of it) based on untimeliness should be decided in its favor as a matter of law.

> Section 337 (1) provides:
> Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a of this code; provided, that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, may be brought shall not extend beyond three months after the time of sale under such deed of trust or mortgage.

SLS argues that this statute does not commence to run on an "installment contract" insofar as the creditor (or the collector) need not file based upon the date of default, but may "elect" to rely on the "terminal" payment date in the loan agreement. See Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740 (1935). In Union Sugar, the California Supreme Court held that the statute does not ripen into an executory contract, i.e., one that establishes a date for payment of the debt in toto. Id. at 746. Thus, under Union a creditor, or collector, may elect to wait until the terminal date of the contract – in plaintiff's case herein, the year 2034 – before seeking to enforce its right to collection.

The undersigned has read the above and SLS's other cited cases, but maintains doubt that they apply to a situation where the creditor has elected to formally declare a default on a mortgage. Union stands for the proposition that the holder of an installment contract may "elect" not to sue after default on an installment. Filing a formal notice of default has all the appearances of making an election to sue on the installment default. Under SLS's argument, a mortgage holder could cloud the title on land by filing a notice of default, but wait twenty or more years to

9

finally bring the case to court.

However, the undersigned need not finally resolve his doubts because SLS's arguments apply to only one-half of plaintiff's invalid filing claim. Plaintiff also claimed that the proof of claim filed in bankruptcy court was false and "inflated"—a FDCPA violation on its own, if true. The statute of limitations argument has nothing to do with this allegation, and the case would proceed on it alone. Accordingly, the motion to dismiss the entire complaint based on the "installment contract" theory should be denied.

C. *BANKRUPTCY CLAIM BY DEFENDANT*

Plaintiff claims that the filing of the bankruptcy claim by SLS was fraudulent and thus entitles him to damages because it was past the statutory period of making a claim which, as has already been determined is not determinative of the action in any event, and because it misstated facts and was thus fraudulent in nature. SLS argues, however that California insulates all court filings from any defamation type of claim allowing challenge only if the gravamen is malicious prosecution citing --. Silbert v. Anderson, 50 Cal.3d 205, 216 (1990) *citing* Ribas v. Clark, 38 Cal.3d .355, 364; Albertson v. Raboff, 46 Cal.2d 375. 381; 382 (1956); Kilgore v Younger, 30 Cal.3d 770, 778 (1982); Carden v. Getzoff, 190 Cal.App.3d 907, 913 (1987); Financial Corp. of America v. Wilburn, 189 Cal.App.3d 764, 771 (1987); Thornton v. Rhoden, 245 Cal.App.2d 80, 99-100 (1966).

SLS's argument fails on elementary principles of federalism. State law cannot trump federal law on a federally authorized claim. That is, (unless adopted as federal common law or otherwise expressly adopted by federal statute, or in a diversity action), state law cannot invalidate the prosecution of a *federal* claim in *federal* court. Examples abound of this proposition: In Perez v. Campbell, 402 U.S. 637, 652 (1971) the Supreme Court stated "[w]e can no longer adhere to the aberrational doctrine of Kesler and Reitz that state law may frustrate the federal law. . . . Thus we conclude that Kesler and Reitz can have no authoritative effect to the extent they are inconsistent with the control principle that any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause [U.S. Const. art. 6 cl. 2] [and] thus may not stand"); Felder v. Casey, 487 U.S. 131, 138 (1988) ( state law notice

of claim requirements in section 1983 actions is invalid); Katzenbach v. Morgan, 384 U.S. 641, 646-647 (1966) (state law literacy requirements inconsistent with Voting Rights Act).

Accordingly, SLS would have to demonstrate that FDCPA itself, or other federal law, allows state law to carve out an exception to what otherwise would be a FDCPA violation. This SLS has not done.

However, in reviewing defendant's Reply Memorandum in support of its Motion to Dismiss, the court was drawn to the following statements found at page 7, line 1 through page 8, line 2:

> For example, in B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225 (B.A.P. 9th Cir. Dec. 18, 2008), the Court was faced with determining whether filing a Proof of Claim could form the basis of a claim under the [F]DCPA. The Court noted that allowing an FDCPA claim would create a conflict with the Bankruptcy Code,
>
> Specifically, a Proof of Claim filed in a bankruptcy case constitutes prima facie evidence of its validity and is deemed allowed unless and until the debtor objects to it; if an objection is filed, the bankruptcy court resolves that objection after notice and a hearing. Id. at 238. In contrast, under the FDCPA, a debt is presumed valid if the debtor does not dispute the debt within thirty days after receipt of an "initial communication"; even then, the FDCPA provides that, if the consumer fails to dispute the validity of a debt, that failure may not be construed by any court as an admission of liability by the consumer. Id. Importantly under the FDCPA, a "communication in the form of a formal pleading" shall not be treated as an initial communication. Id. This creates a quandary for the creditor since, if a Proof of Claim cannot be considered an "initial communication: under the FDCPA, the creditor must send another communication to the debtor containing the required statutory notice; however sending a notice to a debtor in a pending bankruptcy case has been held to violate the automatic stay, as noted by the Court. Id. The conflicting nature of the statutes leaves a creditor with an impossible choice: protect its claim or risk violating the FDCPA
>
> The Court went on to explain that "[a]ttempting to reconcile the debt validation procedure contemplated by the FDCPA with the claims objection process under the Code results in the sort of confliction and conflicts that persuades us that Congress intended that FDCPA be precluded in the context of bankruptcy cases." In re Chaussee, supra, 399 B.R. at 239. The Court went on to explain that, if a debtor believes a creditor has filed a bogus Proof of Claim, the debtor has a remedy for that filing: making an objection to the Proof of Claim in the

11

Bankruptcy Court. Id. at 240. The Court further stated that the Bankruptcy Code "provides an adequate remedy for dealing with baseless proofs of claim" including the issuance of sanctions for bad faith conduct by a party to the bankruptcy case. Id. As a result the Court found the debtor's claim for violation of the FDCPA precluded by the Bankruptcy Code. Id. at 241. (Further citations omitted.)

After reading and re-reading In re Chaussee, and the case it relied upon, Walls v. Wells Fargo, 276 F.3d 502 (9th Cir. 2002), the undersigned is convinced that federal bankruptcy law (as opposed to a state immunity) precludes the utilization of FDCPA for allegedly false bankruptcy statement of claims by creditors. This "falsity" would include both of plaintiff's arguments concerning an invalid debt—statute of limitations and inflated nature of the claim. Although, this is not an issue directly raised by the motion to dismiss, it was raised in the reply brief. Moreover, because this motion is initially decided on Findings and Recommendations, SLS might well be able to raise the issue on objections with plaintiff being given an opportunity to oppose. Judicial efficiency indicates that issue should be adjudicated now.

The Motion to Dismiss should be granted based on In re Chaussee.[5]

D. **RES JUDICATA**

In reviewing SLS's Reply Memorandum in support of its Motion to Dismiss, see above, the court was also of the opinion that principles of *res judicata* and estoppel could apply. Therefore, a request for further briefing was made.

Petitioner's bankruptcy adjudication was a decision on the merits. The bankruptcy decision determined to dismiss the case based on plaintiff's false statements and failure to prosecute. See 5:2-6:8, supra. No one can doubt that a false statement dismissal could be anything but a decision on the merits. Moreover, failure to prosecute in a bankruptcy action is a determination on the merits just as it is in district court. See Bankruptcy Rule 9041 incorporating Rule 7041 which, in turn, is incorporated Fed. R. Civ. P. 41 (b). See also, In re Walker, 322 B.R.

---

[5] The undersigned is not finding that FDCPA violations outside the bankruptcy process would be barred simply because a claim was filed by a creditor in bankruptcy, e.g., pre-bankruptcy harassment violations. However, plaintiff is quite clear in his complaint that he alleges only invalid claims issues. Whether a non-bankruptcy related FDCPA claim would be treated as an asset of the bankrupt estate, and not a plaintiff's, need not be decided.

820, 825 n.2 (D. Nev. 2005); In re Daily, 125 B.R. 816, 818 (D. Haw. 1991).

Therefore, principles of *res judicata* should apply.

"Generally, four elements must be present in order to establish the defense of *res judicata*: (1) the parties were identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and, (4) the same cause of action was involved in both cases. Eubanks v. F.D.I.C., 977 F.2d 166, 169 (5th Cir.1992)." In re Heritage Hotel Partnership 1, 160 B.R. 374, 376-377 (9th Cir. 1993). In the present situation the parties in this action were both parties in the bankruptcy action with regard to the same debt, a bankruptcy court is clearly a court of competent jurisdiction, there was a final judgment on the merits in the bankruptcy action, see Heritage at 377 (a bankruptcy court's confirmation order is a binding final order for purposes of res judiciata), and the cause of action – defendant's right to collect on the debt – was involved in both the bankruptcy action and this one. Thus, at least at the threshold level, the requirements for application of *res judicata* have been met here.

In Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d 525, 528-529 (9th Cir. 1998), the Ninth Circuit Court of Appeals unequivocally stated

> [r]es judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action.' [Robertson v. Isomedix, Inc. (In re Intl Nutronics), 28 F.3d 965, 969 (9th Cir. 1994).], That applies to matters decided in bankruptcy. Id.
>
> ***
>
> Similarly, in In re Intl. Nutronics, 28 F.3d at 969, we stated that where a "claim could have been asserted at the time of the proceeding confirming sale [in bankruptcy] ... this opportunity is sufficient to satisfy [the] requirement[s] of the doctrine of res judicata." (Emphasis added). See also Trulis v. Barton, 107 F.3d 685, 691 (9th Cir.1997) ("Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter."); Bank of Lafayette v. Baudoin (In re Baudoin), 981 F.2d 736, 742 (5th Cir.1993) (finding that a bankruptcy order allowing a proof of claim is a final judgment to be given res judicata effect).

The debtor in a bankruptcy action is also required to disclose any prospective tort claims against a secured creditor, such as defendant purported to be here, in his bankruptcy disclosures or they

will be barred from assertion in a follow-on action. In re Kelley, 199 B.R. 698, 703 (9th Cir. 1996). *Res judicata* acts to bar not only actions litigated in the earlier proceeding but also those that *could* have been litigated. Opperwall v Bank of America, N.A., 561 B.R. 775, 780 (9th Cir. 2016); In re Heritage, supra, 160 B.R. at 377.

Thus a bankruptcy plaintiff who fails to appeal a final bankruptcy Order is bound by that judgment which validates all proofs of claims, both raised and those that went unchallenged in the bankruptcy court, and invites a claimant who is later sued with regard to that claim, as is defendant here, to raise the bar of *res judicata*. Siegel at 529; see also Bank of Lafayette, supra, 981 F.2d at 742.

In this case plaintiff does not dispute that his bankruptcy action went to judgment a mere eight months before he filed the instant complaint seeking tort damages based upon SLS's claims in the bankruptcy court. Plaintiff does not explain why he simply acquiesced in the amount of the claim set forth by SLC in the bankruptcy proceeding. The amount of the claim is then presumed valid. Neither does plaintiff dispute that he failed to list a potential claim against SLS in the course of the bankruptcy litigation and this complaint is, therefore, open to attack under the *res judicata* doctrine. As to why he did not raise a claim against SLS in the bankruptcy venue, plaintiff states that he wasn't aware of the claim until July 9, 2015, four months before the bankruptcy was dismissed on November 2, 2015, ECF No. 21 at 4, when the bankruptcy judge discussed SLS's proof of claim during a hearing and explained to plaintiff how he could use discovery to flesh out the relationship between defendant and the secured debt. Id. at 6:17-21:14. Thus plaintiff was given the tools to determine the relationship of SLS to the claim and its role as a debt collector rather than a creditor, yet he did not take any further action in the bankruptcy court. The Ninth Circuit has held that not *all* facts need be known by the debtor in a bankruptcy action before the duty to raise the claim in bankruptcy arises. Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992). In Hay the debtor leaned of sufficient facts of a purported fraud four months before the bankruptcy was resolved, and here plaintiff similarly learned sufficient facts to put him on notice four months before conclusion of the bankruptcy action. Id. Thus plaintiff was on notice to raise his claim in the bankruptcy court or risk

14

imposition of *res judicata*. Having failed to do that, he is subject to dismissal under the doctrine of *res judicata*.

Moreover, it is not knowledge of the legality of a claim, but knowledge of the facts that gives rise to the claim which is important for *res judicata* purposes. Id. Thus, coming to a belated realization that filing a claim which would be otherwise barred by a statute of limitations could give rise to a FDCPA claim, is not an excuse which would make *res judicata* principles inoperative. Plaintiff knew a claim had been filed by SLC and must have known that he did not agree with the amount set forth.

However, *res judicata* is an affirmative defense that can be waived by a defendant. In re Associated Vintage Group, Inc., 283 B.R. 549, 563 (9th Cir. 2002). As a result, courts are generally wary of raising the issue *sua sponte*, as the court is doing here. However,

> "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." United States v. Sioux Nation, 448 U.S. 371, 432, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (REHNQUIST, J., dissenting) (citations omitted).

Arizona v. California, 530 U.S. 392, 412 (2000).

To wait, in this case, to see if defendant raises the defense, would result in a complete waste of judicial resources, i.e., yet another motion. The basis for application of the doctrine was clearly disclosed in the briefing both for and against the pending Motion to Dismiss, and the parties do not disagree on the basic facts upon which the court is relying here. Thus the court will apply the doctrine here and recommend dismissal of this action on the ground that it is barred by *res judicata*. That is, the claim filed by SLS in the bankruptcy court is found valid in all respects based on *res judicata*, and cannot be disputed here in a FDCPA action.. .

E. JUDICIAL ESTOPPEL

A second basis for arresting this action is the doctrine of judicial estoppel.
"The difference between estoppel and principles of res judicata is that estoppel is based on conduct of a party in the course of litigation, while claim and issue preclusion follow from the fact of the judgment without reference to anyone's conduct. Honoring this distinction

presents a difficult analytical challenge when assessing the scope of the "claim" for claim preclusion purposes: one must resist the temptation to let conduct play a large role in the analysis of the scope of the "claim."

In re Associated Vintage Group, Inc., 283 B.R. 549, 565 (9th Cir. 2002). The doctrine may, therefore, "be invoked 'to protect the integrity of the bankruptcy process," *quoting* Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 785 (9th Cir. 2001). It "commonly takes the form of preventing the debtor from prosecuting, or otherwise enjoying unscheduled property," *quoting* Hamilton, 270 F.3d at 783 --in this case the partial discharge of a debt or potential tort recovery sought by plaintiff in the instant case after failing to offer the bankruptcy the opportunity to consider the claim.

In order to apply judicial estoppel the Ninth Circuit has identified "several factors [that] typically inform the decision whether to apply the doctrine in a particular case:

"First, a party's later position must be 'clearly inconsistent' with its earlier position." Q*uoting* New Hampshire v. Maine, 532 U.S. 742, 750 (2001). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Id. (internal quotation marks omitted). A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 751. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. Id.

Ah Quin v. County of Kauai Dept. of Transp., 733 F3d 267, 270-271 (9th Cir. 2013). "In the bankruptcy context the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." Id. at 271, *citing* Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc. 989 F.2d 570, 571 (1st Cir. 1993), Hay, supra, at 557.

However, as seen from the facts here, plaintiff did not persuade the bankruptcy court to accept his position, i.e., the bankruptcy court dismissed his petition for misconduct reasons and

16

did not confirm a plan based on plaintiff's representations. Although plaintiff's conduct cannot be condoned, he received no benefit from his acquiescence in the proof of claim. Judicial estoppel cannot be found.

*CONCLUSION*

In light of the foregoing, this court finds and recommends as follows:

1. Defendant SLS's Motion to Dismiss should be granted on the basis that a FDCPA claim cannot be asserted on the basis that a debt listed by a creditor in a bankruptcy proceeding is invalid;

2. The Complaint should be dismissed on the alternative grounds of res judicata.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, petitioner may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. The petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 7, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE